## A09A0221. BAEZ v. THE STATE.

(678 SE2d 583)

MILLER, Chief Judge.

Following a jury trial in which he proceeded pro se, Roberto Baez was convicted of a single count of armed robbery (OCGA § 16-8-41). Baez appeals following the denial of his motion for new trial, as amended, challenging (i) the admission of his confession in evidence and (ii) the State's use of two handguns as demonstrative evidence. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the record shows that in the late evening of April 3, 2006, Muhammed Anjum returned home from work and drove his car into the garage, where he noticed that the motion detector light was on. Baez, wearing a mask and gloves, suddenly appeared by his car, knocking on the car window. Wielding a gun, Baez demanded that Anjum open the door. When Anjum opened the door, Baez grabbed him, threw him from the car and threatened to shoot him if he moved. Baez then struck Anjum in the head with the gun, got into his car, and again told Anjum not to move while he pointed the gun at him. Bleeding from being struck in the head, Anjum watched Baez drive away. Immediately thereafter, Anjum's wife called 911, and Anjum reported that his car, a 1995 green Lexus with a Car Zone drive-out tag, had been stolen by a man armed with a gun.

Shortly thereafter, Officer Mike McDonald of the Douglasville Police Department observed the victim's green Lexus traveling eastbound on Interstate 20 and followed the vehicle in a high speed chase exceeding 120 miles per hour. Baez lost control of the vehicle,

striking a guard rail twice before the car came to rest. Baez jumped out of the window and fled on foot, but Officer McDonald apprehended him a short time later. Baez claimed that he suffered injuries to his head and leg following the car wreck. Shortly after midnight on April 4, 2006, Officer Zach Ardis arrived on the scene and advised Baez of his *Miranda* rights while he was seated in the back seat of Officer McDonald's patrol vehicle. When Officer Ardis asked Baez if he understood those rights, Baez assented and gave an oral statement, admitting to the robbery but denying the use of a gun. Subsequently, Officer McDonald transported Baez from the scene to the hospital, where he was taken to the emergency room, secured to the bed with handcuffs, and guarded by Officer McDonald. That same day, between 1:00 a.m. and 2:00 a.m., Officer Tully Yount arrived at the hospital to relieve Officer McDonald and remained in the room with Baez until approximately 5:45 a.m. During that time frame, Baez gave an oral statement to Officer Yount, again admitting his involvement in the robbery.

Prior to trial, Baez moved to suppress his statements to police, asserting that his statements were not voluntary because he was in pain due to serious injuries, and his statement to Officer Yount was not preceded by *Miranda* warnings. Following a *Jackson-Denno* hearing, the trial court denied Baez's motion, and at trial, the State introduced into evidence portions of Baez's oral statements to Officers Ardis and Yount.

1. Baez contends that the trial court erred in admitting his custodial statement to Officer Yount because he failed to re-*Mirandize* Baez or remind him of his *Miranda* rights. We disagree.

"Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal." (Citation and punctuation omitted.) *Johnson v. State*, 277 Ga. App. 41, 44 (2) (625 SE2d 411) (2005).

Evidence adduced at the suppression hearing showed that when Officer Yount was guarding Baez in the hospital room, he spoke with Officer Ardis on his cell phone and learned that Officer Ardis had already given *Miranda* warnings to Baez. Officer Yount did not read Baez his *Miranda* rights again or remind him of his rights prior to conversing casually with Baez about subjects such as Baez's Hispanic accent and his homeland, Cuba. When Officer Yount inquired about what happened, Baez stated that he went with a friend to the Somerset subdivision to meet two females. When they arrived, only one female was present, and an argument ensued between Baez and his friend. After Baez's friend left, Baez observed the victim drive into his garage, and upon approaching the victim, Baez struck him in the head with his fist, and left in the victim's car.

Contrary to Baez's contention, Officer Yount was not required to re-*Mirandize* Baez of his rights. It is well settled that "once a defendant has been informed of his *Miranda* rights, he should be reminded of those rights prior to each subsequent interrogation." (Punctuation and footnote omitted.) *Wallace v. State*, 253 Ga. App. 220, 222 (2) (558 SE2d 773) (2002). "If, however, one investigating officer is replaced by another with no significant lapse in time, it is not considered a subsequent interrogation, but a continuation of the original interrogation." (Punctuation and footnote omitted.) Id.

Here, Officer McDonald initiated the high-speed chase at issue at 12:12 a.m. and stopped Baez approximately four to six minutes later. Baez's arrest followed, and upon his arrival on the scene, Officer Ardis advised Baez of his *Miranda* rights. That same morning, Officer Yount arrived at the hospital between 1:00 a.m. and 2:00 a.m., and before he left, Baez confessed to the robbery. Only a few hours elapsed between the time Officer Ardis read Baez his *Miranda* rights and the time Baez gave his statement to Officer Yount. Consequently, Officer Yount was not required to re-apprise Baez of his *Miranda* rights, as his inquiry was no more than a continuation of Officer Ardis' questioning. *Wallace*, supra, 253 Ga. App. at 222 (2); *Carswell v. State*, 279 Ga. 342, 343-344 (2) (a) (613 SE2d 636) (2005) (it was of no consequence if *Miranda* rights were not read to appellant in second interview, which was part of series of interviews over a span of 12 to 14 hours); *McKenzie v. State*, 187 Ga. App. 840, 844 (4) (371 SE2d 869) (1988) (in view of continuous nature of interrogation, failure to repeat *Miranda* warnings did not render inadmissible the defendant's statement made one hour after initial interview concluded).

Assuming arguendo that Baez's statement to Officer Yount should have been excluded because he was not re-*Mirandized*, we find that the admission of the statement was harmless under the circumstances. Anjum testified that Baez took his car while armed with a gun. Further, Baez's statement to Officer Yount was merely cumulative of his oral statement to Officer Ardis that he took the car "from an Iraqi" using his two fingers and his trial testimony that he ordered the victim out of his car, while pointing his finger at him. Under the circumstances, the error was harmless because the record establishes beyond a reasonable doubt that it did not contribute to the guilty verdict. *Mika v. State*, 256 Ga. App. 546, 547 (2) (568 SE2d 818) (2002) (admission of custodial statement was harmless beyond a reasonable doubt in light of overwhelming evidence of guilt from eyewitnesses); *Manchester v. State*, 226 Ga. App. 653, 656-657 (3) (487 SE2d 449) (1997) (admission of custodial statement was harmless given another officer's legally admitted testimony); *Milton v. Wainwright*, 407 U. S. 371, 372-373 (92 SC 2174, 33 LE2d 1) (1972)

(constitutional error in the admission of an inadmissible confession was harmless because of other cumulative unchallenged confessions).

2. Baez also contends that the trial court erred in allowing the State to use two handguns that were unrelated to the crime as demonstrative evidence because he denied possession of a gun. Again, we disagree.

"A weapon that was not actually used in the commission of an offense, but which is similar to that which was so used is generally admissible into evidence." (Citations and punctuation omitted.) *Stiles v. State*, 216 Ga. App. 308, 309 (2) (454 SE2d 189) (1995). Here, the trial court allowed the State to show Anjum two handguns for demonstrative purposes to determine which gun was similar to the one that Baez used to rob him. One was a "cowboy" gun with a revolving cylinder and the other had a flat side. Anjum identified one of the guns as similar to the one that Baez used and testified that he was struck with the butt of the gun. "Where, as here, the victim of a crime identifies a weapon as similar to that used in the commission of the crime, the weapon is admissible whether or not it is the identical weapon." (Citation and punctuation omitted.) Id.

Assuming arguendo that the trial court erred in allowing the State's demonstrative use of the guns, we find that such error was harmless because the "similar" gun was not admitted into evidence, was solely used for demonstrative purposes, and the evidence showed that the "similar" gun was not the gun used by Baez. See *Stiles*, supra, 216 Ga. App. at 309 (2) (where testimony and trial court's instructions established that the weapon was admitted for demonstrative purposes only and was not the one used by Stiles, "there could be no prejudice such as would infect an otherwise valid verdict and judgment") (citations and punctuation omitted).

For the reasons set forth above, we affirm the trial court's order denying Baez's motion for new trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MAY 15, 2009.

*Mary Erickson*, for appellant.
*David McDade, District Attorney, Jeffrey L. Ballew, James A. Dooley, Assistant District Attorneys*, for appellee.